IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                CRIMINAL ACTION NO. 2:08-cr-00151-2

ARNOLDO AVITA GAMBOA,

          Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant Arnoldo Avita Gamboa's pro se, letter form Motion for Compassionate Release. [ECF No. 283]. The court in deciding such motions will consider the following: whether the defendant has exhausted his or her administrative remedies, has demonstrated "extraordinary and compelling reasons," is not a danger to the safety of others, and the § 3553(a) factors. In deciding what constitutes "extraordinary and compelling reasons" for release by reason of COVID-19, a defendant must demonstrate that he or she has a medical condition listed by the Centers for Disease Control and Prevention as causing an increased risk of severe illness from COVID-19 and that he or she is at a facility which cannot effectively prevent the spread of the virus.

I.    **Background**

On October 15, 2009, I sentenced Mr. Gamboa to a term of life in prison after he was found guilty of distributing more than 5 kilograms of cocaine and conspiring to commit money laundering. [ECF No. 143].

Mr. Gamboa is currently imprisoned at Federal Correctional Institution

Gilmer in Glenville, West Virginia. FCI Gilmer is a medium security correctional institution with an adjacent minimum-security satellite camp that currently houses 1,472 total inmates. *[PRISON]*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/gil/ (last visited Dec. 17, 2020). As of December 17, 2020, there are 9 active cases among prisoners and 11 active cases among staff at FCI Gilmer. *See COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited Dec. 17, 2020). Mr. Gamboa alleges he currently suffers from five health conditions: diabetes, high blood pressure, high cholesterol, gout, and arthritis. [ECF No. 283, at 1].

## II.   Discussion

The First Step Act "embodies Congress's intent to reduce the Bureau of Prison's authority over compassionate release petitions and authorizes the district courts to exercise their independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Galloway*, No. CR RDB-10-0775, 2020 WL 2571172, at *3 (D. Md. May 21, 2020) (internal citations removed); *see also United States v. Stephenson*, No. 3:05-CR-00511, 2020 WL 2566760, at *5 (S.D. Iowa May 21, 2020) ("Unqualified deference to the BOP no longer makes sense now that the First Step Act has reduced the BOP's role.").

For me to reduce Mr. Gamboa's sentence under compassionate release, I must find that he has exhausted his administrative remedies, has demonstrated "extraordinary and compelling reasons," is not a danger to the safety of others, and find that his release is consistent with the § 3553(a) factors. *See e.g., United States v. Howard*, No. 4:15-CR-00018-BR, 2020 WL 2200855, at *2 (E.D.N.C. May 6, 2020);

U.S.S.G. § 1B1.13 (2018). As I will explain, to find "extraordinary and compelling reasons" exist by reason of COVID-19, Mr. Gamboa must demonstrate that he has a medical condition listed by the Centers for Disease Control and Prevention ("CDC") as causing an increased risk of severe illness from COVID-19 and that he is at a facility which cannot effectively prevent the spread of the virus.

### a)  Exhaustion of Administrative Remedies and Section 3582(c)(1)(A)

The First Step Act empowers criminal defendants to request compassionate release for "extraordinary and compelling reasons." 18 U.S.C § 3582(c)(1)(A)(i). But before they make such requests, defendants must ask BOP to do so on their behalf and then wait 30 days. *See* § 3582(c)(1)(A). Upon such a motion from BOP or from a defendant (after BOP denies the request or thirty days have elapsed since the request was filed), a court "may reduce the term of imprisonment . . . ." 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. McCoy*, --- F.3d ---, 2020 WL 7050097, at *8 (4th Cir. Dec. 2, 2020).

Mr. Gamboa requested compassionate release from the warden at FCI Gilmer on July 20, 2020. [ECF No. 283, at 2]. Mr. Gamboa's request was denied by the warden on July 23, 2020. [ECF No. 283, at 3]. Because more than thirty days have passed since Mr. Gamboa sent his initial request to the warden, I find that he has exhausted his administrative remedies. As such, I now turn to whether Mr. Gamboa has alleged extraordinary and compelling reasons that would justify compassionate release.

### b)  Extraordinary and Compelling Reasons

Once an inmate has satisfied administrative exhaustion, courts may reduce their sentences upon a finding of "extraordinary and compelling reasons." *See* 18

U.S.C. § 3582(c)(1)(A).

There are "disagreements [among district courts] about the precise definition of 'extraordinary and compelling reasons' justifying compassionate release."[1] *United States v. Cotinola*, No. 13-CR-03890-MV, 2020 WL 2526717, at *3 (D.N.M. May 18, 2020). But the United States Court of Appeals for the Fourth Circuit has clarified that district courts are not bound by the enumerated extraordinary and compelling reasons listed in Guidelines § 1B1.13 because the Guidelines have not been updated since the passage of the First Step Act. *United States v. McCoy*, --- F.3d ---, 2020 WL 7050097, at *8 (4th Cir. Dec. 2, 2020) ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means the district court need not conform . . . to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction."). "District Courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, at *9 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

Many courts have found "extraordinary and compelling" reasons "supporting release on the basis of a combination of dire prison conditions and underlying health conditions that increase the likelihood of severe illness from COVID-19." *See e.g.,*

---

[1] The specific extraordinary and compelling reasons listed in the Sentencing Guidelines for BOP to consider include i) the defendant is suffering from a terminal or serious medical condition; ii) age of defendant; iii) family circumstances of defendant; and iv) "other reasons." U.S.S.G. § 1B1.13; *United States v. Bass*, No. 1:10-CR-166 (LEK), 2020 WL 2831851, at *3–4 (N.D.N.Y. May 27, 2020). "Following the passage of the First Step Act, courts may independently determine whether such 'other reasons' are present in a given case, without deference to the determination made by the BOP." *United States of America v. Thaher,* No. 17 CR. 302-3 (KPF), 2020 WL 3051334, at *4 (S.D.N.Y. June 8, 2020).

*Bass*, 2020 WL 2831851, at *7 (citing *e.g.*, *Rodriguez*, 2020 WL 1627331, at *9 (finding an "extraordinary and compelling reason" on the basis of the inmate's diabetes, high blood pressure, and liver abnormalities, the outbreak at FCI Elkton, and the short period remaining on his sentence); *United States v. Sawicz*, No. 08-CR-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and conditions at FCI Danbury). I previously granted compassionate release to a defendant who was immunocompromised—suffering from a liver disease, Hepatitis C. *See United States v. White*, No. 2:17-CR-00198-4, 2020 WL 3244122, at *6 (S.D. W. Va. June 12, 2020); *see also Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 17, 2020) (listing "immunocompromised state" as an underlying medical condition causing an "increased risk for severe illness from COVID-19").

In addition, many courts rely upon CDC guidance for whether a medical condition constitutes an "extraordinary and compelling" reason for release. *See e.g.*, *United States v. Salvagno*, No. 5:02-CR-51 (LEK), 2020 WL 3410601, at *4 (N.D.N.Y. Apr. 23, 2020), reconsideration denied (June 22, 2020) ("The Centers for Disease Control and Prevention has advised that people with hypertension face an increased risk of severe illness from COVID-19."); *United States v. Nygren*, No. 1:16-CR-00106-JAW, 2020 WL 4208926, at *12 (D. Me. July 22, 2020) ("Based on the medical records in this case and the CDC guidance . . . ."); *United States v. Bell*, No. 18-CR-60115-BB-4, 2020 WL 4217724, at *4 (S.D. Fla. July 23, 2020) ("CDC guidance indicates that individuals with the following health conditions are at a higher risk of

contracting severe illness due to COVID-19 . . . ."). And many courts reject compassionate release petitions when the defendant does not suffer from any conditions recognized by CDC as causing an increased risk of severe illness from COVID-19. *See e.g.*, *United States v. Adeyemi*, No. CR 06-124, 2020 WL 3642478, at *19 (E.D. Pa. July 6, 2020) ("Mr. Adeyemi's asthma does not currently fit the Centers for Disease Control and Prevention's high-risk category."); *United States v. Mollica*, No. 2:14-CR-329-KOB, 2020 WL 2811504, at *3 (N.D. Ala. May 29, 2020) ("Ms. Mollica is under 65 and the CDC has not listed the underlying conditions from which she suffers as creating particular risk for COVID-19."); *United States v. Arroyo*, No. 2:19-CR-54-1-TLS-JPK, 2020 WL 3118787, at *4 (N.D. Ind. June 12, 2020) ("High cholesterol is not listed on the CDC website as a risk factor related to COVID-19 . . . ."); *United States v. Cosby*, No. 18CR4474-JAH, 2020 WL 3840567, at *4 (S.D. Cal. July 7, 2020) ("CDC has not listed epileptic seizures as a condition that places individuals at a higher risk of severe illness."); *United States v. Frazer*, No. CR 19-110, 2020 WL 2404893, at *2 (E.D. Pa. May 12, 2020) ("Sleep apnea is not listed by the CDC as a serious underlying medical condition that could increase a person's risk for severe illness from COVID-19.").

I join other courts in holding that I cannot find that "extraordinary and compelling" reasons exist to grant release because of COVID-19 unless the inmate has a condition that makes him or her more at risk for developing a serious illness from COVID-19 *and* the facility where the inmate is housed has conditions such that its inmates are at a higher risk of contracting COVID-19. *See United States v. Raia*, 954 F.3d 594, 594 (3d Cir. 2020) ("But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently

justify compassionate release . . . ."); *United States v. Penaloza*, No. 19-238, 2020 WL 1555064, at *2 (D. Md. Apr. 1, 2020) ("[T]he mere presence of the virus, even in the detention setting, does not translate to the release of a person accused.").

In deciding which conditions result in an inmate being a higher risk for COVID-19, I will defer to CDC's list of medical conditions causing an increased risk of severe illness from COVID-19. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 17, 2020). Using CDC guidance will allow for more predictable standards in deciding which defendants have "extraordinary and compelling" reasons justifying release.

If an inmate can demonstrate that he or she has a condition identified by CDC, next, the defendant must show that his or her prison conditions are such that BOP cannot effectively prevent the spread of COVID-19. Factors include but are not limited to the steps BOP has taken to stop the spread of COVID-19 in that particular prison and steps to follow CDC guidance, the ability of inmates to socially distance, the amount of hygiene products and face masks provided to inmates, and the number of COVID-19 cases in that prison.

I will note that Attorney General William Barr has twice issued memoranda directing BOP to prioritize the use of home confinement for vulnerable inmates. *See Memorandum                for                Director                of                BOP*, https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf (last visited Sept. 13, 2020) and https://www.justice.gov/file/1262731/download (last visited Sept. 13, 2020). Yet, by all accounts, BOP has resisted calls to release vulnerable inmates to home confinement. In its Response, the Government points to

the fact that since "March 26, 2020, BOP has placed an additional 18,112 inmates on home confinement." [ECF No. 285, at 8]. However, according to the BOP, this number includes "inmates who have completed service of their sentence." BOP, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/faq.jsp (last visited Dec. 17, 2020). Because this number of 18,112 inmates includes those who have already completed their sentence, it cannot be used as a metric for determining how well BOP has responded to the Attorney General's directive.

Indeed, other district courts have noted their awareness "of the growing evidence of the BOP's chronic mismanagement of its vulnerable population during the COVID-19 pandemic." *Woodard v. United States*, No. 2:12-CR-105, 2020 WL 3528413, at *3 (E.D. Va. June 26, 2020); *see also Wilson v. Williams*, 4:20-cv-00794, 2020 WL 2542131, at *1–2 (N.D. Ohio May 19, 2020) (documenting the "unacceptable" percentage of positive tests at FCI Elkton and BOP's "ineffective[ness] . . . at stopping the spread"). "Even in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others." *United States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *2 (D. Idaho Apr. 7, 2020) (the likelihood of contracting the virus is greater in prison than if a defendant were able to fully self-isolate at home); *see also United States v. Stephens*, 447 F. Supp. 3d 63, 65, (S.D.N.Y. Mar. 19, 2020) (discussing the heightened risk presented by a COVID-19 outbreak in a jail or prison versus the community at large). Thus, when looking at whether an inmate is at a prison with a high risk of contracting COVID-19, it is also imperative to recognize the context and failures of BOP to stop the spread of COVID-19 in

prisons.

Mr. Gamboa alleges five health conditions: diabetes, high blood pressure, high cholesterol, gout, and arthritis. [ECF No. 283, at 1]. In its Response, the government confirmed that Mr. Gamboa suffers from Type 2 diabetes mellitus. [ECF No. 285, at 3]. Type 2 diabetes is on the CDC list of conditions that put a person at an increased risk of severe illness from the virus that causes COVID-19. *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 17, 2020). Hypertension is on the list of conditions that *might* put a person at an increased risk for severe illness form the virus that causes COVID-19. *Id.*

Having found that Mr. Gamboa does suffer from health conditions on the CDC list of conditions that put him at an increased risk for severe illness should he contract COVID-19, I now turn to whether Mr. Gamboa has alleged conditions at FCI Gilmer that put him at an increased risk for contracting COVID-19. Mr. Gamboa makes no allegations about the conditions at FCI Gilmer beyond that the BOP "is unable to control" the spread of COVID-19. With his Motion, Mr. Gamboa included an Inmate Bulletin [ECF No. 283, at 6]. Issued on November 5, 2020, the Bulletin notes a number of precautions that FCI Gilmer was implementing to combat the recent increase in cases of COVID-19 at FCI Gilmer including all inmates remaining "secured for a minimum of 14-days," cancelling social visitations, and requiring face coverings to be warn to and from the shower. *Id.* Despite Mr. Gamboa's argument that COVID-19 is hard to contain and manage in a prison setting, the First Step Act calls for an assessment of Mr. Gamboa's conditions, not an assessment of prisons

generally. While Mr. Gamboa's fears that he may contract COVID-19 are understandable, fears alone do not rise to the level of extraordinary and compelling reasons.

### c) Danger to the Community and Section 3553(a) Factors

For a reduction in the term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), a court must find that the "defendant is not a danger to the safety of others or the community" and consider the § 3553(a) factors. *Howard*, 2020 WL 2200855, at *2. Section 3142(g) sets out factors to help with the dangerousness assessment, including the following:

> (1) "the nature and circumstances of the offense charged;" (2) "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history;" and (3) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

*Bass*, 2020 WL 2831851, at *8 (quoting § 3142(g)).

In addition to considering whether Mr. Gamboa constitutes a danger to his community, I also consider the § 3553(a) factors. Title 18, Section 3553(a) requires that a sentence be "sufficient, but not greater than necessary, to . . . reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." 18 U.S.C. § 3553(a).

Even if Mr. Gamboa had been able to demonstrate extraordinary and compelling reasons justifying his release, I would not be able to find that he is not a

danger to the safety of his community or that his release would be supported by the § 3553(a) factors. Mr. Gamboa was convicted for distributing 68 kilograms of cocaine and conspiring to launder tens of thousands of dollars. He received a mandatory life sentence because of his previous drug offense convictions. Prior to his most recent conviction, Mr. Gamboa had four prior drug convictions including distribution of heroin and cocaine. Mr. Gamboa has demonstrated an inability to comply with the law and shortening his sentence would neither promote respect for the law nor provide just punishment for the serious offense he was convicted of.

### III.    Conclusion

For the foregoing reasons, Defendant's motion for compassionate release and request for appointment of counsel [ECF No. 283] is **DENIED without prejudice.** The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:      December 21, 2020

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

11