IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                            CRIMINAL ACTION NO. 2:08-cr-00151-2

ARNOLDO AVITA GAMBOA,

    Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court is Mr. Gamboa's Second Motion for Compassionate Release. [ECF No. 289]. Mr. Gamboa argues that he is entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i) because extraordinary and compelling reasons exist to warrant a reduction in his sentence. He argues that he is entitled to relief because his underlying conditions increase his risk of developing serious complications from COVID-19, and because there is a significant disparity between the sentence he received and the one he would face today. For the reasons set forth below, Mr. Gamboa's Motion is **DENIED in part and GRANTED in part.** I **DENY** Mr. Gamboa's motion for immediate release because his underlying conditions subject him to an increased risk of developing serious complications from COVID-19. However, I **FIND** that the significant disparity between the sentence that Mr. Gamboa received and the one he would face today warrants a reduction in Mr. Gamboa's sentence. Accordingly, I **GRANT** Mr. Gamboa's motion for relief under 18 U.S.C. §

3582(c)(1)(A)(i) and **MODIFY** Mr. Gamboa's sentence from life imprisonment to a term of 25 years.

I.   BACKGROUND

Mr. Gamboa was convicted at trial on June 3, 2009, of one count of conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and one count of conspiracy to launder money in violation of 21 U.S.C. § 956(h). At the time of Mr. Gamboa's trial, section 841 required a mandatory minimum sentence of life imprisonment for defendants with two or more prior drug felony convictions. § 841(b)(1)(A). Prior to the trial, the government timely filed an information establishing Mr. Gamboa's prior convictions and seeking enforcement of the mandatory minimum penalty. [ECF No. 134]. Mr. Gamboa was convicted in 1976 of conspiracy to distribute heroin and possession with intent to distribute heroin, in 1980 of possession with intent to distribute cocaine, and in 1988, while still serving his prior sentence, of possession with intent to distribute heroin. These convictions triggered the mandatory life sentence in section 841(b)(1)(A), and on October 15, 2009, I sentenced Mr. Gamboa to life imprisonment in accordance with that statute. The United States Court of Appeals for the Fourth Circuit affirmed Mr. Gamboa's sentence on March 8, 2011. On December 3, 2021, Mr. Gamboa filed the instant Motion for Compassionate Release.

II.   Legal Standard

The First Step Act empowers criminal defendants to request compassionate release for "extraordinary and compelling reasons." 18 U.S.C § 3582(c)(1)(A)(i). To grant an inmate's motion for compassionate release under section 3582(c)(1)(A)(i), the

court must: (1) find that extraordinary and compelling reasons warrant a sentence reduction, and (2) consider the relevant 18 U.S.C. § 3553(a) sentencing factors. 18 U.S.C. § 3582(c)(1)(A). When analyzing "extraordinary and compelling" reasons, "[t]he district court enjoy[s] broad discretion." *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021). The Fourth Circuit determined that district courts may take an individualized approach in determining whether "extraordinary and compelling" reasons are established. *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020). Therefore, "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

## III. DISCUSSION

Mr. Gamboa alleges that two extraordinary and compelling reasons justify his release. First, he argues that his diabetes, obesity, and hypertension justify his release in light of the ongoing COVID-19 pandemic. Second, he contends that the disparity between the mandatory life sentence he received in 2008 and the sentence he would face today is so significant that it constitutes an extraordinary and compelling reason to reduce his sentence. [ECF No. 289, at 4].

### A. COVID-19

Mr. Gamboa has previously moved for compassionate release based on his health conditions in light of the ongoing COVID-19 pandemic. In my order denying that motion, I explained that the COVID-19 pandemic constitutes an "extraordinary and compelling" reason warranting release only if the inmate can show that 1) he has a condition that makes him more susceptible to serious illness from COVID-19, and

3

2) the conditions where the inmate is housed are such that the Bureau of Prisons cannot control the spread of COVID-19 at that facility. [ECF No. 286, at 6]; *see also United States v. Raia*, 954 F.3d 594, 594 (3d Cir. 2020) ("But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ."); *United States v. Penaloza*, No. 19-238, 2020 WL 1555064, at *2 (D. Md. Apr. 1, 2020) ("[T]he mere presence of the virus, even in the detention setting, does not translate to the release of a person accused.").

In deciding which conditions result in an inmate being a higher risk for COVID-19, I will defer to CDC's list of medical conditions causing an increased risk of severe illness from COVID-19. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 27, 2022). Using CDC guidance will allow for more predictable standards in deciding which defendants have "extraordinary and compelling" reasons justifying release.

Mr. Gamboa alleges three health conditions that increase his susceptibility to severe illness from COVID-19: diabetes, high blood pressure, and obesity. [ECF No. 289, at 4–5]. In support, Mr. Gamboa attached his prison medical records, which confirm that he is obese and that he has adult-onset type II diabetes and hypertension. [*See generally* ECF No. 289-2]. Type 2 diabetes and obesity are on the CDC list of conditions that increase a person's risk of severe illness from COVID-19. *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 27, 2022). Hypertension is on the list

of conditions that *might* put a person at an increased risk for severe illness from COVID-19. *Id.* Therefore, I find that Mr. Gamboa does suffer from health conditions on the CDC list of conditions that put him at an increased risk for severe illness should he contract COVID-19.

Next, I must consider whether Mr. Gamboa has alleged that the conditions at the facility where he is housed are such that BOP cannot effectively control the spread of COVID-19. Factors in assessing prison conditions include, but are not limited to, the steps BOP has taken to stop the spread of COVID-19 in that particular prison, the steps the facility has taken to follow CDC guidance, the ability of inmates to socially distance, the amount of hygiene products and face masks provided to inmates, the facility's vaccination rate, and the number of COVID-19 cases in that prison. *United States v. Boston*, No. 2:19-cr-00162, 2021 WL 77466, at *3–4 (S.D. W. Va. Jan. 7, 2021).

Mr. Gamboa is currently imprisoned at Federal Correctional Institution Gilmer in Glenville, West Virginia. FCI Gilmer is a medium security correctional institution with an adjacent minimum-security satellite camp that currently houses 1,597 total inmates. Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/gil/ (last visited Jan. 27, 2022). As of January 27, 2022, there were 0 active cases of COVID-19 among prisoners and 16 active cases among staff at FCI Gilmer. *See COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited Jan. 27, 2022). FCI Gilmer has vaccinated 1,375 of its 1,597 inmates and 200 of its staff. *See COVID-19 Vaccine Implementation*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited Jan. 27, 2022).

5

Mr. Gamboa's arguments about the conditions at FCI Gilmer amount to little more than an allegation that BOP is unable to control the spread of COVID-19 generally. To specifically address conditions at FCI Gilmer, he highlights the fact that inmates continue to "share telephones, computer terminals, showers and toilets," and the high infection rate in Gilmer County, West Virginia.[1] Yet, the government and Mr. Gamboa both note that FCI Gilmer is currently running at operational level 3. This means that the facility is locked down, has suspended visitation, and has implemented the facility-wide use of N95 or surgical masks, social distancing measures, and daily symptom screening for staff entering the facility. *See BOP COVID Operational Levels*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited Jan. 27, 2022). FCI Gilmer is also testing unvaccinated staff and inmates weekly and quarantining and testing any inmate or staff member exposed to COVID-19. *See id.*

Since the beginning of the pandemic, 291 inmates and 99 staff at FCI Gilmer have recovered from COVID-19; one inmate died. *See COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jan. 27, 2022). Currently, there are no active COVID-19 cases among inmates, and 16 among staff. Additionally, FCI Gilmer's vaccination rates are high. 1,375 of its 1,597 inmates and 200 of its staff are vaccinated. *See COVID-19 Vaccine Implementation*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited Jan. 27, 2022). Mr. Gamboa himself is vaccinated. [ECF No. 289-2, at 2].

---

[1] As of Jan. 27, 2022, the Gilmer County's percent positivity rate is 10.08%. *See Infection Rate Breakdown*, W. Va. Dept. of Health and Human Resources, https://dhhr.wv.gov/COVID-19/Pages/default.aspx (last visited Jan. 27, 2022).

Despite Mr. Gamboa's argument that COVID-19 is generally hard to contain in a prison setting, I must consider the conditions at FCI Gilmer, in particular. As demonstrated by their current lockdown procedures, FCI Gilmer is operating in compliance with CDC guidelines and with the BOP's Coronavirus Action Plan. [ECF No. 293, at 5]. It has taken steps to isolate prisoners and staff who have been exposed to COVID-19 and to minimize spread from staff entering the facility. The fact that there are no active COVID-19 cases among inmates and only 16 among staff, the facility's high vaccination rate, the quarantine measures for exposed inmates and staff, the screening of staff upon entry, and the weekly testing of unvaccinated individuals all indicate that FCI Gilmer is taking all available precautions to prevent the spread of COVID-19 within the facility. I find that Mr. Gamboa has not shown that the conditions at FCI Gilmer are such that BOP cannot effectively control the spread of COVID-19. While Mr. Gamboa's fears that he may contract COVID-19 are understandable, fear alone is not an extraordinary and compelling reason to warrant release. Accordingly, I **FIND** that Mr. Gamboa has not established extraordinary and compelling reasons for release based on COVID-19.

B. Relief Under Section 3582(c)(1)(A)(i)

In 2018, Congress passed the First Step Act, which expanded prisoners' access to compassionate release and made significant changes to the United States' sentencing regime. Among many other changes, the First Step Act rewrote section 841(b)(1)(A) to change the mandatory minimum sentences to which defendants are exposed. Specifically, defendants with two prior serious felony convictions are now subject to a mandatory minimum sentence of 25 years, as opposed to the mandatory

life sentence that applied to Mr. Gamboa. A mandatory life sentence is now reserved for defendants who have two prior serious drug or violent felonies *and* where death or serious bodily injury resulted from the product the defendant distributed. 18 U.S.C. § 841(b)(1)(A). As a result of these changes, many defendants who were sentenced prior to 2018 are serving significantly longer sentences than those they would receive today.

The Fourth Circuit has held that such a disparity can be an extraordinary and compelling reason that warrants a sentence reduction. *United States v. McCoy*, 981 F.3d 271, 285 (4th Cir. 2020). While the *McCoy* court considered changes to section 924(c)'s sentencing regime, other district courts have found—and I agree—that the logic "espoused in *McCoy* . . . applies with equal force to the similar sentence disparities brought about by the First-Step-Act changes to [21 U.S.C.] §§ 841 and 851." *United States v. Johnson,* No. 2:07-CR-0924-DCN-3, 2021 WL 2379474, at *4 (D.S.C. June 10, 2021). Several courts have found that the disparity between a mandatory minimum of life imprisonment and a mandatory minimum term of years is significant enough to constitute an extraordinary and compelling reason warranting a sentence reduction. *See, e.g., id.*; *United States v. Sappleton*, No. CR 01-284-PJM-3, 2021 WL 598232, at *3 (D. Md. Feb. 16, 2021) (finding the disparity between a mandatory life sentence and a mandatory fifteen-year sentence extraordinary and compelling).

At the time of Mr. Gamboa's sentencing, I had no choice but to sentence him to life in prison. Congress has since changed the drug sentencing structure to reflect its view that a mandatory life sentence for defendants like Mr. Gamboa is greater than necessary to achieve the goal of punishment. *United States v. Redd*, 444 F. Supp. 3d

8

717, 723–24 (E.D. Va. March 16, 2020) (explaining that changes made under the First Step Act reflect "a legislative declaration of what level of punishment is adequate."). Pursuant to changes implemented by the First Step Act, Mr. Gamboa would face a mandatory minimum sentence of 25 years in prison were he sentenced today.[2]

I find that this disparity between the sentence Mr. Gamboa received and the one "Congress now believes to be an appropriate penalty" for a defendant in Mr. Gamboa's position constitutes an extraordinary and compelling reason to grant relief. The Government argues that even with the different mandatory minimum, Mr. Gamboa would still qualify for a United States Sentencing Guidelines range of 360 months to life. While this is true, I have wide discretion at sentencing to consider all circumstances and impose a sentence outside of the guidelines range. Because of the pre-First Step Act mandatory life sentence, I did not have that discretion when imposing Mr. Gamboa's original sentence. Accordingly, I will reconsider all circumstances in light of the section 3553(a) factors to modify Mr. Gamboa's sentence.

C. 18 U.S.C. § 3553(a) Factors

After finding that extraordinary and compelling reasons exist to reduce Mr. Gamboa's sentence, I must conduct an individualized review of the section 3553(a)

---

[2] Mr. Gamboa argues that he would not qualify for a section 851 enhancement, and therefore the 25-year mandatory minimum, today because he does not have two prior "serious drug felony" convictions. He is incorrect. A "serious drug felony" is a state or federal offense 1) involving manufacturing, distributing, or possessing with intent to distribute a controlled substance; 2) punishable by ten or more years; 3) for which defendant served more than one year in prison; and 4) where defendant was released from prison for the serious drug felony within fifteen years of the commencement of the instant offense. 21 U.S.C. § 802(57); 18 U.S.C. § 924(e)(2). Mr. Gamboa has two prior convictions for drug distribution, each punishable by more than ten years, for which he served more than one year. He was released from prison in 1988 and 1992, respectively. [ECF No. 181, at 13–14]. He joined the conspiracy to distribute cocaine that resulted in his current jail sentence between 2001 and 2002 (less than 15 years later). *Id.* at 7. Mr. Gamboa qualifies for the section 841 mandatory minimum of twenty-five years.

9

factors, including Mr. Gamboa's post-conviction behavior. 18 U.S.C. § 3582(c)(1)(A)(i); *McCoy*, 981 F.3d at 278. In my denial of Mr. Gamboa's previous Motion for Compassionate Release, I found that "Mr. Gamboa has demonstrated an inability to comply with the law and shortening his sentence would neither promote respect for the law nor provide just punishment for the serious offense he was convicted of." [ECF No. 286, at 11]. In that motion, however, Mr. Gamboa applied for release solely based on his health conditions and the COVID-19 pandemic. The only reasonable relief in light of that argument was immediate release to home confinement or deportation proceedings. That is not the case here. Consistent with my prior ruling, I find that the section 3553(a) factors prohibit immediate release to home confinement or deportation proceedings, but they do not prohibit a sentence reduction entirely. I apply the section 3553(a) factors here to determine the extent of the reduction warranted in Mr. Gamboa's case.

> When imposing punishment, a court must consider whether the sentence is
>> sufficient, but not greater than necessary . . . to reflect the seriousness of the offense; to promote respect for the law; . . . to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

A sentence of 25 years is sufficient, but not greater than necessary to achieve the goals set out in section 3553(a). Mr. Gamboa has served 12 years of his life sentence. During that time, he has stayed out of trouble and taken advantage of some of the provided educational opportunities. [ECF No. 289-1, at 4–5]. Mr. Gamboa

stands convicted of a serious crime, and he has a serious criminal history—including a conviction for distributing heroin while serving a sentence for cocaine distribution. [ECF No. 181, at 13–14]. He and his co-conspirators ultimately distributed 68 kilograms of cocaine. Mr. Gamboa is 73 now and serving the mandatory minimum would make him 86 when released. He is subject to a deportation order, and upon release he will be transferred to the Immigration and Naturalization Service for deportation proceedings. Upon deportation, he plans to live with his family in Mexico. [ECF No. 289, at 9].

      A 25-year sentence reflects the seriousness of Mr. Gamboa's offense and is sufficient to deter the criminal conduct of others. Potential drug distributors will be no more deterred by a 30-year sentence than by a 25-year sentence. A 25-year sentence is also sufficient to protect the public from further criminal conduct by Mr. Gamboa. Mr. Gamboa's health conditions indicate that he will not have the ability, at 86 years old, to continue in his criminal life. Additionally, after 25 years in prison, the criminal landscape will have changed significantly, and Mr. Gamboa's criminal connections will be equally infirm or retired. Accordingly, I **FIND** that a 25-year sentence is sufficient but not greater than necessary to achieve the goal of sentencing outlined in section 3553(a).

## IV. CONCLUSION

      For the reasons stated above, Mr. Gamboa's Second Motion for Compassionate Release is **GRANTED in part and DENIED in part.** Mr. Gamboa's term of imprisonment is **modified to 25 YEARS**. Upon release, the Defendant will be delivered to the Immigration and Naturalization Service for deportation proceedings

under the Immigration and Nationality Act. The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

Enter: January 28, 2022

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE